JOHN P. FISHER vs. JOHN A. ALSTEN & another.

Worcester.    October 5, 1904. — October 18, 1904.

Present: KNOWLTON, C. J., BARKER, HAMMOND, & BRALEY, JJ.

*Replevin.    Voting Contest.*

A candidate in a voting contest for a chattel at a fair, if the committee having authority in the matter declare another person to be the winner and make a symbolical delivery of the chattel to such other person, cannot maintain replevin for the chattel on the ground that the decision of the committee was wrong and that he should have been declared the winner, having no title and no right to possession.

For the purposes of the decision of this case, it was assumed, that a voting contest at a fair for a chattel at ten cents a vote is legal, and also it was assumed, that in such a contest the person who turned in the most cash, exclusive of promissory notes, should have been declared the winner.

REPLEVIN for a motor cycle which had been the subject of a voting contest at a public fair of an association known as the Viking Cycle Club in Worcester.    Writ in the Central District Court of Worcester dated March 30, 1903.

On appeal to the Superior Court the case was tried before *Gaskill*, J.    It appeared that the club chose a committee of five who were given full power to carry on a fair with voting contests ; that the committee hired Mechanics Hall and conducted a fair in the name of the club for several days and evenings, closing on a Saturday ; that a voting contest for " the most popular bicycle rider in Worcester" was open to all, and that several persons, including the plaintiff, one Eld and one Nilson, were solicited by members of the committee to enter the contest, which was for the motor cycle replevied.

The plaintiff testified that one Pope, a member of the committee, asked him to enter the contest, and gave him a book with which to solicit votes, saying that they would be ten cents apiece, and that the man who turned in the most money by eleven o'clock the last night of the fair would be the winner of the wheel. Pope, called as a witness by the plaintiff, testified that nothing was said about money excepting that the votes were to be ten cents each.    Eld testified that one Pierson, a member of the

committee, urged him to enter the contest, and told him that the wheel would be voted away at ten cents a vote.

Each contestant was given a book in which persons desiring to vote wrote their names together with the amount contributed. The contestants themselves and their friends circulated these books and solicited votes. The money paid for votes remained the property of the club, whether the votes were given for a successful or an unsuccessful contestant. The motor cycle was on exhibition in the hall during the fair. At about a quarter past ten on the evening of Saturday, Nilson, who was a man of good financial standing and an owner of real estàte, went to the treasurer of the committee and showed a' promissory note·for $50, signed by himself and payable to the Viking Cycle Club on demand, proposing to turn it in for five hundred votes for himself in the motor cycle contest. The note was shown to a majority of the committee, who assented to accepting it in payment for votes. No public announcement was made as to whether notes would be accepted. It did not appear that any note was offered by the plaintiff or his friends, or that any note was refused. Before the time for voting expired, the Nilson note was placed with the cash which represented the proceeds of the voting for Nilson, and the votes purchased thereby were sufficient to give him the highest number, although the plaintiff at eleven o'clock on Saturday evening had the most cash turned in and would have had the highest number of votes if the note had not been counted. Subsequently the full committee voted to accept and count the note, and declared Nilson to be the winner.

Between eleven and twelve o'clock on Saturday evening the committee caused it to be publicly announced from the platform of the hall that Nilson had won the motor cycle. The treasurer then, in behalf of the committee, informed Nilson that the motor cycle was his, and delivered to him the "spark valve," which, as it appeared, was a small but important part of the mechanism, without which the machine would not run. The rest of the motor cycle was carried from the hall to the store of the defendants to be put in running order. The committee had bought the cycle from the defendants in the name of the club, but it then had not been paid for. Both Nilson and the plaintiff were members of the club. Eld was not.

On the Monday morning next following, the plaintiff visited the defendants' store and demanded the motor cycle. The defendants replied that they understood Nilson to be the winner, and refused to give it up. The cycle then was replevied by a constable who had accompanied the plaintiff and previously had made a demand.

Afterwards on the same day Nilson paid his note for $50, and on the next day the committee paid the defendants the bill incurred by the club in connection with the fair, including the price of the motor cycle.

At the close of the plaintiff's evidence, the defendants asked the judge to rule that the plaintiff was not entitled to recover. The judge asked the defendants' counsel whether he rested, and the counsel replied that he did. Whereupon the judge declined to rule as requested, and upon the foregoing undisputed facts directed a verdict for the plaintiff. The defendants alleged exceptions.

*C. T. Tatman & H. W. Bowker,* for the defendants.

*J. H. S. Hunt, E. H. O'Brien & J. A. Thayer,* for the plaintiff.

HAMMOND, J. Even if it be assumed in favor of the plaintiff that the "voting contest" was legal, and further, that he, as the person who turned in the most cash, should have been declared the winner, there is still one defect in his case which is fatal.

The action is replevin and the plaintiff must show at least his right to possession. And this must be a legal right; an equitable right is not sufficient. In this case the right must rest on title alone; and the title never was in the plaintiff. The committee, acting under "full power to manage and carry on the fair and the voting contests," decided and formally announced that Nilson was the winner, and delivered to him an essential part of the machine as a symbolical delivery of the whole. It is not shown that the committee did not act in good faith and in accordance with an honest belief as to the proper interpretation of the conditions of the contest and the rights of the contestants. It does not appear that at the time Nilson was declared the winner the plaintiff was present or knew the state of the "polls," but at any rate he does not seem to have made any objection to the action of the committee until the following Monday.

It is plain that up to the time of the decision of the committee in favor of Nilson the proceedings had not gone beyond a mere executory contract so far as respected the committee. Right or wrong they did not think that the plaintiff had won, and the minds of the contracting parties never met in favor of the plaintiff on that question. Hence neither the title nor the right to possession arising therefrom ever passed to the plaintiff. If he has been aggrieved by the action of the committee he must seek his remedy in another form of action.

~ *Exceptions sustained.*